UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CHARLES IVAN KING,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ECUMENICAL HOUSING,<br><br>　　　　　Defendant. | Case No. 20-cv-06455-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 24 |

## INTRODUCTION

Plaintiff Charles Ivan King, who is representing himself, sued his former employer EAH, Inc., claiming that EAH wrongfully fired him on March 9, 2017 (1) based on his race and in retaliation for his filing an HR complaint alleging harassment, in violation of Title VII of the Civil Rights Act of 1964, (2) based on his disability, in violation of Title I of the Americans with Disabilities Act ("ADA"), and (3) in breach of the parties' contract, which required him to obtain a real estate license as a condition of employment by March 24, 2017, and (4) failed to return his security deposit, in violation of Cal. Civil Code § 1950.5(g).[1] EAH moved to dismiss on the grounds that (1) Mr. King did not file his lawsuit within 90 days after receiving a right-to-sue letter from the

---

[1] First Am. Compl. ("FAC") – ECF No. 8; Mot. – ECF No. 24 at 1. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 20-cv-06455-LB

1   Equal Employment Opportunity Commission ("EEOC"), and he did not file his complaint with
2   California's Department of Fair Employment and Housing agency ("DFEH") within 180 days
3   after the allegedly unlawful employment practice, which bars his claims under the Title VII and
4   ADA claims, and (2) Mr. King does not otherwise plead facts to support his claims.[2] The court can
5   decide the motion without oral argument, N.D. Civ. L. R. 7-1(b), and grants the motion.

**STATEMENT**

Mr. King filed his complaint on September 11, 2020.[3] An earlier-assigned judge issued a screening order under 28 U.S.C. § 1915(e) that identified (as deficiencies in the complaint) Mr. King's failure to give a short and plain statement of the facts underlying his claims or identify the federal claims giving rise to federal jurisdiction.[4] Mr. King then filed a first amended complaint ("FAC"). In it, he claims that EAH fired him wrongfully, in violation of Title VII, the ADA, and the parties' employment contract, and he claims a failure to return his damage deposit.[5] To support his claims, he alleges the following.

In September 2015, EAH hired Mr. King to be a live-in property manager at its housing complex in Menlo Park, California, which apparently was the first public-private apartment building on the Menlo Park Veterans Administration campus.[6] Mr. King is African American and a retired veteran. He has ten years of experience as a property manager.[7] He was the only African American resident-property manager that EAH employed in the South Bay Area region.[8]

Mr. King gives several examples of EAH's discrimination against and harassment of him. First, on his first day of work on October 5, 2015, Mr. King's immediate supervisor made him

---

[2] Mot. – ECF No. 24.
[3] Compl. – ECF No. 1.
[4] Screening Order – ECF No. 6.
[5] FAC – ECF No. 8 at 5–7 (¶¶ 21–34).
[6] *Id*. at 2 (¶¶ 7–8), 3 (¶ 11).
[7] *Id*. at 3 (¶ 11).
[8] *Id*. at 4 (¶ 15).

ORDER – No. 20-cv-06455-LB                    2

wait "for over three hours in a sitting room" and said that he was not the first choice for the job. Second, even though Mr. King had a doctor's order to avoid heavy lifting after a surgery, EAH provided him no assistance when the company moved to a new location. Third, EAH intervened and did not allow Mr. King to fire a temporary worker for undermining Mr. King, even though it was Mr. King's job responsibility to hire and fire. Fourth, at the grand opening of the apartment building (where Congressional representatives attended), EAH first forbade Mr. King from speaking. But when the designated speaker was too drunk to speak, EAH demanded that Mr. King speak and gave him only 30 minutes to prepare. Finally, Mr. King should have had a staff of three people at the property, but "on many occasions [he] was forced to complete the duties of maintenance, receptionist and assistant manager daily" by himself.[9]

In August 2015, Mr. King told EAH that "his disability was affecting his ability to perform the duties of his current position and requested reassignment to the position of assistant manager."[10] He said that "the ongoing harassment actions of Lester Fontecha and the deaths of four veterans who lived at [the property] was a trigger" to his PTSD, which caused him to be "lethargic, questioning authority and withdrawn."[11] EAH's human-resources supervisor "began the interactive process" for Mr. King.[12] In December 2016, the HR supervisor recommended that Mr. King "be kept as the assistant manager" because he had been struggling. EAH then sent him a job application to complete for the new position and told Mr. King to start the recruiting process for the new manager to replace him in his existing position.[13]

On February 13, 2017, EAH gave Mr. King an official memorandum to have his real-estate license by March 24, 2017, or he would face termination. On March 9, 2017, EAH fired Mr. King without completing the interactive process and thus without acting on his request for a reasonable

---

[9] *Id.* at 2–3 (¶¶ 8–10), 4 (¶ 14).
[10] *Id.* at 3 (¶ 12).
[11] *Id.* (¶ 13).
[12] *Id.* at 4 (¶ 16).
[13] *Id.* (¶ 17).

ORDER – No. 20-cv-06455-LB          3

1  accommodation. Mr. King obtained his real-estate license on March 16, 2017, but EAH had
2  already terminated his employment by that point.[14]

3  After his termination, Mr. King filed discrimination complaints with the EEOC and the DFEH.
4  The EEOC issued a right-to-sue letter dated January 17, 2018.[15] In a notice dated April 10, 2018,
5  DFEH acknowledged Mr. King's filing of a disability-discrimination complaint (noting that it was
6  also filed with the EEOC).[16] DFEH issued a right-to-sue letter on September 13, 2019.[17]

7  EAC moved to dismiss on the grounds that Mr. King did not file his lawsuit within the
8  statutory time frames that apply to his federal claims, and he does not otherwise state claims.[18] All
9  parties consented to magistrate jurisdiction.[19]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

---

[14] *Id*. (¶¶ 18–19).

[15] EEOC Right-to-Sue Letter, Ex. A to Request for Judicial Notice ("RJN") – ECF No. 24-1 at 4–5. The court takes judicial notice of the agency filings and letters. *Etienne v. Kaiser Found. Hosp.*, No. C 11-02324 LB, 2012 WL 92610, at *1 n.2 (N.D. Cal. Jan. 11, 2012).

[16] DFEH Notice of Complaint, Ex. B to RJN – ECF No. 24-1 at 7–16.

[17] DFEH Right-to-Sue Letter, Ex C to RJN – *Id*. at 18–20.

[18] Mot. – ECF No. 24.

[19] Consents – ECF Nos. 7, 20.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

"A pro se complaint must be 'liberally construed,' since 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Entler v. Gregoire*, 872 F.3d 1031, 1038 (9th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

The court dismisses the federal claims because they are not timely, and Mr. King does not otherwise state a claim. The court declines supplemental jurisdiction over the state-law claims.

**1. Timeliness of Claims**

Mr. King did not timely file his complaint within 90 days of the EEC right-to-sue-letter or timely file his complaint with the DFEH.

A plaintiff must exhaust ADA and Title VII claims by filing a written charge with the EEOC or a qualifying state agency. 42 U.S.C. § 12177(a); *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1104 (9th Cir. 2018) (Title VII claims) (citing 42 U.S.C. § 2000e-5); *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1172 (9th Cir. 1999) (ADA Title I claims) (citing 42 U.S.C. § 12117(a)).

"There are effectively two limitation periods for Title VII claims." *Scott*, 888 F.3d at 1106. First, the plaintiff must file his administrative charge within 180 days of when the allegedly

1  unlawful employment practice occurred. *Id.* (citing 42 U.S.C. § 2000e-5(e)(1)). When the plaintiff
2  initially files a charge with a state agency (here, the DFEH) that enforces the state's own
3  antidiscrimination laws, the statutory 180-day rule does not apply. Instead, the plaintiff must file a
4  charge within 300 days after the allegedly unlawful employment practice or 30 days after notice
5  that the state agency has terminated its proceedings under state law, whichever is earlier. *Id*. at n.2.
6  Second, "after exhausting administrative remedies, a claimant has 90 days to file a civil action."
7  *Id*. at 1106. If a plaintiff does not timely file an administrative charge, claims that he may later
8  bring in court are subject to dismissal. *Cf. MacDonald v. Grace Church Seattle*, 457 F.3d 1079,
9  1080 (9th Cir. 2006) ("[Plaintiff] did not file her charges with the EEOC within the 180-day time
10 limit, and as a result her Title VII claims were properly dismissed.").

11 Here, Mr. King did not file his complaint within 90 days of the EEOC's right-to-sue letter. The
12 letter was dated January 17, 2018. Mr. King filed this lawsuit on September 11, 2020. This is more
13 than two years after the EEOC issued the right-to-sue letter and is thus untimely. *Cf. Payan v.
14 Aramark Mgmt. Servs. Ltd.*, 495 F.3d 1119, 1122 (9th Cir. 2007) ("We measure the start of the
15 limitations period from the date on which a right-to-sue notice letter arrived at the claimant's
16 address of record . . . [w]here the date of actual receipt is unknown, we will estimate that date
17 based on the date EEOC disposition and issuance of notice, with some compensation of mailing
18 time"). Also, Mr. King's complaint to the DFEH filed on April 10, 2018 does not save his claims
19 because he filed it more than 300 days after he was fired. *Scott*, 888 F.3d at 1106.

20 Mr. King does not dispute that that his federal claims are untimely.[20] Instead, he contends that
21 to a layperson, the rules are confusing. He acknowledges that "ignorance of the law is no excuse,"
22 but points to his extenuating circumstances, including his depression and other personal
23 characteristics that made it hard for him to understand the rules. This does not change the
24 outcome. *Theodule v. Blue Mercury*, No. 17-cv005581-DMR, 2018 WL 4110555, at *5 (N.D. Cal.
25 Aug. 29, 2018) (rejecting equitable-tolling argument that the pro se plaintiff "was unaware of the
26 90-day statute of limitations").

---

[20] Opp'n – ECF No. 25 at 2–4.

### 2. Failure to State Federal Claims

Mr. King did not plausibly plead facts plausibly establishing his federal claims.

First, he did not plausibly plead facts establishing a Title VII claim. To plead employment discrimination under Title VII, a plaintiff must show the following: (1) he is a member of a protected class; (2) he was qualified for the position and was performing satisfactorily; (3) he experienced an adverse employment action; and (4) that "similarly situated individuals outside [the] protected class were treated more favorably." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). "Although a plaintiff does not necessarily need to plead each of these elements specifically in her complaint, they nevertheless help to determine whether she has set forth a plausible claim." *Thomas v. Unknown*, 18-cv-03060-JCS, 2018 WL 4027021, at *3 (N.D. Cal. Aug. 21, 2018) (cleaned up). Mr. King alleged that he was a member of a protected class and was qualified, but he did not allege that similarly situated individuals were treated more favorably. His allegation — that "[o]ther property managers of a race different from Plaintiff were allowed to have a full measure of management duties but [he] was stripped of these duties" — is a conclusion, not a fact allegation.

Second, Mr. King did not plausibly plead facts establishing a hostile work environment based on his race. To plead a hostile work environment, he must show the following: "(1) [] he was subjected to verbal or physical conduct of a racial [] nature; (2)[] the conduct was unwelcome; and (3) [] the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686–87 (9th Cir. 2017) (cleaned up). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury." *Id.* at 687. "Generally, a plaintiff alleging racial or national origin harassment would present facts showing that he was subjected to racial epithets in the workplace." *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (cleaned up). Mr. King did not plead any facts suggesting that his work issues were related to his race.

1    Third, Mr. King did not plausibly plead facts about retaliation. To state a claim, he must allege that "he undertook a protected activity under Title VII, his employer subjected him to an adverse employment action, and there is a causal link between those two events." *Vasquez v. Cty. Of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003). Mr. King alleges that EAH "retaliated against him after [he] filed a HR complaint against supervisor Takeisa Theriot for harassment."[21] That allegation is conclusory and does not show a "causal link" between his firing and HR complaint.

Finally, Mr. King did not plausibly plead facts that EAH discriminated against him based on his disability. To state a claim under the ADA, a plaintiff must show that (1) he is disabled under the ADA, (2) he is otherwise qualified for the position with or without a reasonable accommodation, and (3) he suffered an adverse employment action because of his disability or was denied a reasonable accommodation. *Lindsey v. Claremont Middle Sch.*, No. C 12-02639-LB, 2012 WL 5988548, at *3 (N.D. Cal. Nov. 29, 2012) (citing *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999)). Mr. King alleges that he suffers from PTSD, and he alleges that he was engaged in the interactive process and was supposed to return a job application for a new job. But he does not allege enough about the circumstances surrounding his termination for the court to conclude that he plausibly pleads an ADA claim, especially because he alleges that he was fired because of his race.

### 3. Supplemental Jurisdiction

Because Mr. King does not plausibly plead federal claims, the court declines to exercise jurisdiction over his state claims.

Although a federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Indeed, unless "considerations of judicial

---

[21] FAC – ECF No. 8 at 5 (¶ 22).

ORDER – No. 20-cv-06455-LB                 8

economy, convenience[,] and fairness to litigants" weigh in favor of the exercise of supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims*." United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.")

Given the court's dismissal at the pleadings stage, the court declines to exercise jurisdiction over the state claims.

## CONCLUSION

The federal claims are not timely. There are no facts suggesting that Mr. King can cure this deficiency. The court dismisses the federal claims as untimely and does not exercise supplemental jurisdiction over the state claims. The dismissal is thus without leave to amend.

**IT IS SO ORDERED.**

Dated: January 11, 2021

_____
LAUREL BEELER
United States Magistrate Judge